UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | Bankruptcy Case |
| ) | No. 10-61542-fra13 |
| MARY CONSTANCE BENAFEL, ) | |
| ) | MEMORANDUM OPINION |
| Debtor. ) | |

## I. FACTS

Debtor commenced this Chapter 13 case on March 24, 2010. Her schedules reveal that she is the owner of real property in Springfield, Oregon, valued, at the date of the petition, at $148,500. The property secures a loan from Indymac Mortgage Services/One West Bank. The principal balance of the loan was, as of the date of the petition, approximately $320,000.

The parties agree that the Springfield property is not the Debtor's principal residence, and was not as of the petition date. It was, however, her principal residence at the time the existing loan was obtained, and the security interest in the property granted.

Debtor's Chapter 13 reorganization plan dated April 12, 2010 provides for payments to the lender equal to the present value of the property: that is, 60 monthly payments of $2,475 each. The plan projects a 1% dividend to holders of unsecured claims.

The lender objects to confirmation, claiming that the proposed treatment of its loan is an impermissible modification of a claim secured by Debtor's principal residence. Debtor responds that the anti-modification provision is inapplicable because the subject property was not her residence at the time she filed her petition.

Page 1 – MEMORANDUM OPINION

## II. DISCUSSION

Code § 1322(b)(2)[1] provides that a plan may

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

Confirmation of the Debtor's plan turns on whether the status of property as a residence is determined as of the date the security interest was granted, or the date of the petition. I find that the date of the security interest controls, and that the Debtor's proposal in this case unlawfully modifies the lender's claim.

This Court has previously held that the date of the transaction controls. In re Hildebran, 54 B.R. 585 (Bankr. D.Or. 1985) and In re Whitehead, 695-64334-fra13 (Bankr. D.Or. 3/1/96, unpublished). The Debtor, acknowledging the foregoing cases, argues that they should be reconsidered in light of In re Roemer, 421 B.R. 23 (Bankr. D. D.C. 2009). In Roemer, the court held that the anti-modification provision did not apply to a loan taken out to purchase a residence, where a provision in the loan documents required the debtor to reside in the property for a minimum of a year. The court found, and Debtor argues here, that this contractual provision limits application of § 1322(b)(2) to the time specified in the provision. The trust deed securing the loan in this case provides that

> 6. Occupancy. Borrower [Debtor] shall occupy, establish and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the property as Borrower's principal residence for at least one year after the date occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

In In re Smart, 214 B.R. 63 (Bankr. D.Ct. 1997), property that was the debtor's principal residence at the time of the original mortgage had been leased out to unrelated third parties at the time the debtor's petition was filed. The court concluded that the lender's claim was subject to § 1322(b)(2)'s anti-modification provision:

---

[1] All statutory references herein, unless specifically stated otherwise, refer to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

Page 2 – MEMORANDUM OPINION

> This court believes that the critical phrase, "*real property that is the debtor's principal residence*" is intended to modify its more immediate antecedent term, "security interest". . . the subject clause is susceptible of at least two credible interpretations. First, it can be read, as the debtor suggests, to refer to a home's status as a principal residence at the *present time*. . . . Second, it can be read, as urged by the [mortgage holder] to refer to the home's status *at the time that the security interest was created*. . . . Congress left an ambiguity in the statute which compels recourse to its legislative history. The legislative history of § 1322(b)(2) indicates that favorable statutory treatment of homestead mortgages was intended to encourage and sustain a flow of affordable capital into the home lending market. . . . In construing § 1322(b)(2) so as to give maximum effect to the intentions of Congress, this court allies itself philosophically with those courts which approach post-*Nobelman* modification issues from the perspective of the circumstances existing at the time of the subject credit transaction, not the serendipitous or manipulated facts existing on the date of the filing of the petition.

Smart at 67-68, as cited in *II Keith M. Lundin, Chapter 13 Bankruptcy*, 3d. § 121.2.

I agree with the analysis of the Smart court and others that have followed that opinion, and adhere to this Court's earlier opinions in Hildebran and Whitehead. I do not agree with the Roemer court's view that the language described above operates as a contractual limitation on the anti-modification protection provided for in § 1322(b)(2). There is no dispute here that the loan agreement contains the language quoted above.[2] However, the Court received no testimony regarding the context of the loan, or the parties' intention respecting the quoted language. The lender's intention in requiring the language may have been simply to assure that the borrower actually moves into a residence purchased with a home loan underwritten by the lender. Whatever the parties' intentions, the Court may not find that the language operates as a waiver of the lender's protections under Code § 1322(b)(2) unless the contractual language is explicit to that effect, and reflects a knowing and purposeful waiver of the bank's rights under the Bankruptcy Code. See Johnson v. Swaim, 343 Or. 423, 431, 172 P.3d 645 (2007)("Waiver 'is the intentional relinquishment of a known right'. . . manifested 'in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power'.")(internal cites omitted). To summarize, the claim of One West Bank may not be modified, because it is secured by property that was the Debtor's principal residence at the time the credit transaction occurred. It follows that confirmation of the plan must be denied.

// // //

---

[2] The language is taken from page 6 of Defendant's memorandum of law regarding confirmation.

Page 3 – MEMORANDUM OPINION

The foregoing constitutes the Court's findings of fact and conclusions of law. An order will be entered contemporaneously denying confirmation without prejudice, and giving the Debtor leave to submit a modified plan within 28 days of the date of the order.

FRANK R. ALLEY, III
Chief Bankruptcy Judge

Page 4 – MEMORANDUM OPINION